PEOPLE *v.* TIMMONS.

1. CRIMINAL LAW—FAIR TRIAL—ALIBI—NONJURY CASE.
  In the trial of a criminal case without a jury the defendant should not be put in the position of having to consent that the trial judge's clerk could testify as to matters learned over the telephone during the course of the trial which tended to impeach testimony of defendant's alibi witnesses or take the chance of opposing the court by objecting to it.

2. SAME—CONFRONTATION OF WITNESSES—CONSENT OF COUNSEL.
  The right of a defendant in a criminal case to be confronted with witnesses is an important one which should be safeguarded by the court and failure to do so is not overcome by consent of counsel.

3. SAME—RAPE—ASSAULT—ALIBI—REASONABLE   DOUBT—NONJURY
CASE.

> In the trial of a prosecution for rape and assault where the state of the evidence is such that the uncorroborated testimony of the prosecuting witness and that of the witnesses for defendant and himself as to claimed alibi are in direct conflict upon an issue of fact the resolution of which determines guilt or innocence and the trial court, sitting without a jury, caused his clerk to make inquiry by telephone to ascertain the truth of an important part of the alibi proofs and then caused the clerk to be sworn and interrogated as to what he had learned over the telephone, an irresistible conclusion is created that the trial judge entertained at least a reasonable doubt as to defendant's guilt.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 15, 1942. (Docket No. 76, Calendar No. 41,801.)   Decided March 17, 1942.

John Timmons was convicted of assault with attempt to commit rape. Reversed and new trial granted.

*Edward N. Barnard,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Ralph E. Helper* and *Richard S. De Coursey,* Assistant Prosecuting Attorneys, for the people.

BUTZEL, J. (*concurring*).   Defendant was charged with having committed assault and rape on October 4, 1940, in the township of Dearborn in Wayne county.   He was tried by a judge without a jury and convicted of assault with intent to commit rape. Complainant was of age and had been married over four years.   She had previously worked in a beer tavern.   As the sole ground of appeal, defendant claims that the conviction was against the great and

overwhelming weight of the evidence. Possibly it was thus stated so as to give emphasis to the claim. The question should be whether or not the conviction was against the weight of the evidence, or whether guilt was established beyond reasonable doubt. .

While the claim of error necessitates a review of the testimony, we shall omit unnecessary details. Complainant testified with a great deal of positiveness to the following: that she and her husband planned to go out the night of October 4, 1940; that she arranged with a neighbor to look in occasionally to see that her two-year-old child was sleeping; that, upon her husband's failure to return home, she went out and attempted to find him, and visited two beer gardens without any success; that she thereupon decided to return home, when defendant, accompanied by another man, drove up and agreed to help her find her husband; that they drove to several beer gardens looking for his car; that complainant only went into one tavern where she drank two glasses of wine, which did not affect her; that the search was futile and she asked to go home; that she, with defendant and his companion, all sat on the front seat of the car. Her further testimony follows. The companion left them, whereupon defendant, instead of driving to complainant's home, proceeded in a different direction. Complainant protested and even tried to take hold of the steering wheel. She stated that they drove off a certain road "just out into the woods." Complainant alighted from the car and started to run away, but defendant "grabbed hold" of her. She testified that she became sick and nauseated and could not put up much of a struggle, and that he committed the crime in the back seat of the car. He then drove her near her home. She walked the rest of the distance. Her husband came home about 15 minutes later. She stated that she

told him about the crime, and that thereupon they together drove to the police station in order to make complaint. They were told to return in the morning. She described the car, which corresponded in year and type to the one defendant owned.

Defendant, on the other hand, claims that he did not meet the plaintiff that night nor any other night, and that the story is a complete fabrication. He further gave notice of an alibi and attempted to account for all his actions and whereabouts on the night of the alleged crime. These included events from early evening until sometime after midnight when the crime was alleged to have occurred, as well as the remainder of the night. He showed that he had been married only 20 days. He had been previously married. A number of character witnesses testified in his behalf. He, however, admitted that he had been arrested and convicted of drunkenness once in 1940 and another time a year or two prior thereto. Although he had worked as a waiter in a beer tavern, he was gainfully employed and had been for some time at the Ford Motor Company. Complainant had also worked as a waitress in a beer tavern.

Complainant did not know the third party in the automobile and, therefore, could not identify him. She was also unwilling to disclose anything about her husband's condition. The record would indicate that he was more or less intoxicated when he came home and she was anxious to keep that fact out of the case. There was delay before the complaint was signed but that was due to the fact that it required some prior research to find the place where the alleged crime took place in order to draw the complaint. In her testimony, she stated that the crime took place on a certain road a short distance "just out into the woods." It was shown that there

were no woods off the road where she claimed the car stopped. There were only a few trees there, but it was a dark night. She further claims that she made a struggle and also an outcry. There was no claim of bruises, scratches, or torn clothing. The story, however, is coherent and positive.

As far as the record shows and without the advantage of seeing the witnesses, we would not be much inclined to give more credence to complainant's story over that of defendant's, were it not for a fatal misstatement in the alibi. Defendant's mother, wife, two sisters, brother and brother-in-law all gave testimony supporting the alibi. Defendant claimed that he returned from work about 3:30 in the afternoon, had supper with his wife, went to his mother's later in the afternoon, where he remained until 11 or 11:30 that night, when he went home with his wife. He only left his mother's home that evening about 7 p.m. when he with his brother went to his sister's to bring a stove to his mother's, as she was moving into the house next door to the one in which she had previously lived. They borrowed a trailer for that purpose. The witnesses identified the date of October 4, 1940, as the one on which the mother had moved to the new home. The mother testified to having the electric lights changed to her name for this home, but that she did not go down to the electric light company but called them on the telephone either that day or the day before so that she could have light in the house when she moved in. The court interrogated the sister, who had previously testified that she had gone to the light company to order the light changed to her mother's name, but now testified that her mother asked her to call up the Detroit Edison, and that she did so and her mother did the talking, and that she called from the house in which her mother was

living and from which she was moving that day. She was positive that she called up by telephone, and then the court asked: "You said twice earlier that you went out and had the lights turned on," she replied that she did it by telephone. The court became suspicious and with the consent of the attorneys, the clerk of the court was permitted to testify that he had called up the Detroit Edison Company (evidently at the judge's request) and its records showed that the day prior to the moving, defendant's sister had personally visited its office, had printed the mother's name on an application and then signed her own name. While the testimony of the others to the alibi and referring to other circumstances did not go into the question of the telephone case, considerable doubt was cast on the entire alibi even though it may be claimed it did not fall even after this large hole was made in it. The judge evidently did not give any credence to it after the falsity of the testimony in regard to the changing of the lights was brought out.

The case presents difficulties. On reading the record, much depends upon the credibility of the witnesses. The crime charged is seldom one witnessed by others than the parties directly involved. *People* v. *Whittemore,* 230 Mich. 435. The general rule at common law is that it does not require corroboration of plaintiff's testimony even when denied by defendant in order to convict defendant before a jury. *People* v. *Miller,* 96 Mich. 119. This seems to be the general rule supported by the majority of jurisdictions. See the many cases collated in 60 A. L. R. 1125.

In *People* v. *Petty,* 234 Mich. 282, 287, 288, where the charge was also assault with intent to commit rape, and the testimony of prosecutrix directly conflicted with that of defendant, we held that the court was justified in denying motion for new trial based

on the claim that the verdict of guilty was against the great weight of the evidence. And in *People* v. *Petrosky,* 286 Mich. 397, 400, where the defense of alibi was interposed to a charge of breaking and entering, and, as here, only one eyewitness testified for the prosecution while defendant produced an array of alibi witnesses (who were not, however, as in this case, relatives), we held:

"The jury was not bound to believe the witnesses who testified in favor of defendant's defense of alibi, as there was testimony to show the contrary. *State* v. *St. Clair,* 139 Wash. 428 (247 Pac. 461); and a jury may believe one witness as against many. *Baugh* v. *State,* 89 Ind. App. 283 (166 N. E. 264). It is the jury's province to determine the credibility of all of the witnesses, including those whose testimony tends to prove an alibi. *People* v. *Costello,* 320 Ill. 79 (150 N. E. 712). Where the testimony presents a fair issue of fact for the jury and would have justified a verdict either of guilty or not guilty, the verdict is not against the weight of the evidence. *People* v. *Pratt,* 231 Mich. 243. The weight and credibility of the testimony of these various witnesses was for the jury, and its determination cannot be said to be against the overwhelming weight or preponderance of the evidence."

An alibi properly supported by credible testimony would unquestionably have brought about an acquittal. *People* v. *Crofoot,* 254 Mich. 167.

Although the court obtained the consent of counsel before he asked his clerk to testify as to the result of the query he made and the conversation he had with the Edison Company relative to their records, and no error is claimed because of the admission of such testimony, we nevertheless frown upon such practice in a criminal case, although by itself it is not ground for reversal under the circumstances. The sole question is whether the verdict is against

the weight of the evidence. The husband of the complainant was not called upon to testify; corroborating proof that she told her husband about the attack immediately after it occurred or that she and her husband at once complained to the police would be helpful. While it might be a proper desire on the part of complainant not to have her husband involved in the case, the liberty of defendant and his entire future are at stake. Her testimony in regard to the manner and the method of the assault, while it may be absolutely true, nevertheless raises suspicion. The testimony of other alibi witnesses was not disputed although it is very possible that they might have been mistaken. We appreciate that in a case of this nature, gaps in the proof and some inconsistency in the testimony frequently occur. Notwithstanding the fact that the trial judge had a better opportunity to judge the credibility of the witnesses, after a careful reading of the record, we are forced to conclude that there may be some question whether the conviction is not against the weight of the evidence. We are sufficiently satisfied that the ends of justice would be better subserved if a new trial were granted.

The conviction is reversed and a new trial ordered.

Chandler, C. J., and Bushnell, J., concurred with Butzel, J.

Boyles, J. This case was tried by the court without a jury. The sole question is whether the proofs establish the guilt of the defendant beyond a reasonable doubt. To establish this, the people rely entirely upon the sole testimony of the complaining witness. The defense was an alibi. Six witnesses (including the defendant) testified that defendant was at his mother's home, at a distance from the

scene of the alleged offense, at the time of the alleged commission. The circuit judge caused his court clerk to make inquiry by telephone to ascertain the truth of an important part of the alibi proofs. The court then caused his clerk to be sworn and interrogated him as to what he had learned over the telephone. This information was relied upon by the court in disbelieving the testimony of the alibi witnesses. It was pure hearsay and the defendant was not confronted with certain material witnesses or with their records and had no opportunity for cross-examination. In the trial of a criminal case by the court without a jury, the defendant should not be put in the position of having to consent to such a procedure at the suggestion of the court or take the chance of opposing the court by objecting to it. The right of a defendant in a criminal case to be confronted with witnesses is an important right which should be safeguarded by the court. Failure to do so is not overcome by consent of counsel.

"It is elementary that a person may not be convicted by testimony taken outside the court room, when defendant is not present to confront the witnesses. * * *

"Where the state of the evidence is such that the uncorroborated testimony of the prosecuting witness and that of defendant are in direct conflict upon the very issue of fact the resolution of which determines guilt or innocence, and the trier of the facts, on his own initiative, requests permission of defendant's counsel to consult opinion evidence (a psychopathic examination and report), consisting of conclusions of fact drawn by one (the court psychiatrist) who was not an eyewitness of the alleged crime, leaving defendant's counsel faced with the embarrassing dilemma of either compelling respect for his client's constitutional rights to be confronted by the witnesses against him from the judge

as trier of the law, but simultaneously running the risk of antagonizing and arousing the suspicion of the same judge as trier of the facts, the conclusion is irresistible that the judge did entertain at least a reasonable doubt of defendant's guilt." *People* v. *Mayrand, ante,* 225.

This requires reversal and a new trial which is granted.

NORTH, STARR, and SHARPE, JJ., concurred with BOYLES, J. WIEST, J., did not sit.